24-593. And each side has 10 minutes. Okay. Let me just get to your case here. I'm going to move on my iPad here. Okay. Good morning. Good morning, Your Honors. Catherine Young from the Federal Public Defender's Office for the appellant Michelle Rodriguez. I'd like to reserve about three minutes of my time and I'll try to watch the clock. So Ms. Rodriguez was convicted of knowingly and with intent to defraud possessing at least 15 unauthorized access devices. She was stopped in a car. There was a backpack and a white plastic bag with about 140 pieces of mail matter, including approximately 33 pieces of open mail, checks, credit cards, and relevant here, two legitimate and unaltered California driver's licenses. She challenges the fact that the district court imposed a sentencing enhancement under 2B1.1B11, which applies where the offense involved the possession of an authentication feature. Here it was the hologram on the driver's licenses. The authentication feature had a significant impact on her sentence. It raised the low end of her guidelines range from 12 months to 24 months, thus doubling her sentencing guidelines range. Thus the enhancement had as much weight in the sentencing calculus as the offense itself. Well, you're a federal defender, so you deal with sentencing all the time. And I think the word involved comes up a lot. Okay. So why doesn't we just look at the word involved? Doesn't that do the necessary work here? If the mens re for the underlying offense is proven, all the district court must find is that the possession or use of the driver's license was involved in the underlying offense. Why should that require a separate intent component? Well, I think that question is answered by the Supreme Court's case in Dubin, which we analyzed in the briefs. The government tells us that relates is the same as involves. They're synonyms. And Dubin extensively analyzed the concept of what relates to in an enhancement. And I think all of its analysis is very helpful here. In Dubin, as here, the government argued that the enhancement applied across the board automatically. No further analysis was required. All that had to be was the possession. Here, in Dubin, the Supreme Court said it rejected the government's near limitless interpretation. It says, while words like in relation to are in isolation indeterminate, the statutory context taken as a whole points to a narrower reading. And it said in relation to is context sensitive. And remember that the government tells us in relation to is the same as involves. It's context sensitive. So, but it's your argument that the intent element from the underlying offense transfers to the sentencing enhancement. We're arguing that at least there has to be knowing. We're also arguing that there should be intent to use, but one or the other. In that argument, what's your best case that supports it? Well, I think the Dubin case is the best. Okay, that's your best case. So, with respect to the second part of the question that Judge Callahan's asking, trying to sort of ingest in the mens rea requirement into the sentencing guideline, how do you square your position with Lavender and Gonzalez that very clearly indicate that we treat sentencing guidelines different than the criminal statutes? We don't assume or presume the sign terror requirement is imputed. In Gonzalez and Lavender, the cases are very different because first of all, those don't require the offense involve the authentication feature. In those enhancements, it just says like, for example, in Gonzalez, it was a firearm was stolen. And nevertheless, the Gonzalez court, and that issue was revisited. That's Gonzalez, I think it's from 2001. The issue was revisited in Prien Pinto by this court in 2019, and the court revisited the same analysis, saying even though the feature itself, the enhancement itself does not require mens rea, and even though there's a note in the guidelines saying that no mens rea is required, they don't need to know that the firearm is stolen, we're still going to look to see whether this is constitutionally acceptable. And the Prien Pinto court in 2019 looked at this and said there's a statutory reason. First of all, it's clear from the statute and the guidelines and the notes that knowledge is not required. But we also think that there's a reason why this is an exception to the general rule of requirement of mens rea, because we're going to place the onus on the defendant possessing a stolen firearm to inquire into the genesis of the firearm. So that's why that's very different. In Lavender, you have a case which also I think supports this, because there the issue is did the defendant know that he had a screwdriver? Did he know that the screwdriver was a dangerous weapon, which he was enhanced for? And he used the weapon by jabbing into the guard's back to force the guard to move along. So there's no real dispute that he knew that he was using it as a weapon. But nonetheless, the court said we're going to look at, if we apply this to his co-defendants, we're going to look and see did they reasonably expect that a screwdriver was going to be used in the offense. And based on that, they allowed it to be applied. So even in these cases where there's no mens rea, where there's not, here we've got the offense involved. So we have language that we have to interpret somehow. In those enhancements, there's nothing. Just a simple state, the firearm was stolen. Nonetheless, the courts engage in whether that's acceptable and what level of knowledge is acceptable in order to impose an enhancement. And let me go on, unless there's any further questions on those issues. Let me go on to Dubin, because I think Dubin is very important in its emphasis that here's a word that's very context sensitive. It could be expansive or narrow, and what we have to do is look at the context of the word. We have to look at the statutory scheme, and that's what Dubin did. And Dubin also emphasized this is an enhancement. An enhancement has to distinguish aggravating conduct for which heightened punishment is sought versus non-aggravating conduct. And all of those principles that are espoused in Dubin apply here, because here if we look at the statutory scheme, which is discussed in the briefs, and I'll just briefly analyze it, we're going back to the SAFE-ID Act. They never intended to address the mere possession of an authentication feature. It was all to do with counterfeiting and altering authentication features. Well, so if let's just, I'm just saying this hypothetically because we haven't conferenced on it, but let's just think I think that you can resolve this by looking at the word involve and that we don't have to do the mens re analysis that you're talking about. It seems pretty clear to me that the license was involved in the whole part of it. So if I go to that simplistic approach hypothetically, then does your client lose? If there is, if the only thing that has to do is that it's there, it's in the mail, and even if she didn't know it was there, it's still there, then the authentication feature could be applied. But we're arguing that more is applied, is required. Okay, I just wanted to make sure. Do you want to save the balance of your time? Yes, I will. Thank you, Your Honor. Okay, thanks. Unless, any questions? Good morning. Good morning, Your Honors. May it please the Court, Sariya Bahadur on behalf of the United States. On its face, this authentication feature guideline enhancement does not import any extra elements beyond possession or beyond any elements of the underlying offense. And I'll start on Dubin, the Dubin test, the Crux test. The defense has essentially proposed three different tests in this appeal, all of which are atextual. So starting with the Crux test, which came up first in reply, Dubin obviously involved 1028 Big A, which is a standalone statute that imposes criminal liability, a two-year mandatory minimum. The phrase in that statute was in relation to. The guideline enhancement does not have those exact words. The guideline enhancement has, as Judge Callahan pointed out, involved and involved. That happens a lot. There's a lot of that. Sure. Exactly. I think within all of Chapter 2B1.1, many of the enhancements, including one not challenged here, the offense involved. So you say then federal defenders deal with involved all the time. We do, and as do district courts. And so involved in Smith, a Supreme Court case, which is talked about in Dubin, actually did analyze that phrase involved in. And that's in our brief. And it does say that it's supposed to be an expansive term. And it can mean relate to. And relate to is context-specific, and it's connecting offense and it's connecting possession. But the guidelines don't define involved, right? They don't, but they do define them as offense. Let me just look at Miriam Webster here.  And says Miriam Webster defines involved as, quote, having a part in something, unquote. Can you explain how the possession of the driver's license in this case had a part in the underlying offense? Sure. So in the underlying offense, the defendant was charged with the possession of 15 or more unauthorized access devices. One of those unauthorized access devices within the indictment was that Capital One bank card, which was assigned to victim VK, and the defendant had the driver's license of victim VK. Two, it's in her plea agreement, right? So she agreed not just to the underlying offense of conviction, but she also agreed, which is obviously related if you're agreeing to it, that she possessed not just these driver's licenses, but a host of other mail matter, a ledger with names, etc. She also led the officers on the day of the offense. She confessed to the crime. This is in the defendant's sentencing position multiple times, and rightfully so because they were asking for a lenient sentence based on her acceptance of responsibility. Let me ask you this. Is it possible for the driver's licenses at issue in this case to be involved in the underlying offense if Ms. Rodriguez didn't know the driver's licenses were amongst the items in the stolen mail? Yes. So how? Because of the meaning of the word offense. Offense is not just offense of conviction. It's also relevant conduct. Relevant conduct is further defined in the guidelines as all acts or omissions taken during the commission of offense, which we would submit that the driver's license is part of the commission of the offense, in preparation for the offense or to avoid detection of the offense. Relevant conduct is also defined as part of the common course and scheme, which allows for the grouping rules to be triggered in this case. And so based on the word relevant conduct, which is baked into the meaning of offense of conviction, this defendant could be held responsible for possessing items that fall within the enhancements. Let me ask you this. I gave you that hypothetical, but let me make one little change. Neither of the driver's licenses at issue matched any of the names on the credit cards. Can those driver's licenses be involved in the underlying offense, even though it would be impossible for them to have been used with any of the credit cards? I think so, yes. And that goes exactly to the language of the guideline enhancement, as well as the language of the word offense and relevant conduct. But Congress made a choice to punish possession within this guideline enhancement and possession of authentication features specifically. And authentication features, I mean, it's a narrow group of identification documents, but it's those that are issued by government. So you're talking passports, right, driver's licenses. And those are very valuable to identity thieves. You can create bank accounts. You can use them to, I mean, make fraudulent purchases. You can also sell them. Identity thieves want real driver's licenses because that will help them further any additional identity theft crimes. Let me ask you this, counsel. I want to give you my own little scenario because I just want to know how expansive this rule is. What if, let's say, Ms. Rodriguez was 20 years old and she had a fake ID because she wanted to go to a bar and drink. And she had that fake ID on her when she was pulled over. And she admitted to having, you know, the mail from other people and stuff. Does the fact that then you find that fake ID in her wallet or in her purse that same day with everything, does that give rise? I think that would be more difficult. And I think that's the work of relevant conduct. Relevant conduct, if we think of it as a circle, you have at the core your offense of conviction, and then you have your relevant conduct as your outer bounds. And the further we get outside of relevant conduct, whether she's actually possessing that fake ID in connection with her offense because she went out to a bar the night before, I think it would be a harder road for the government to tow. I think that's the saying. And that would be essentially laid bare at a sentencing hearing. And that's why this is not the enhancement becomes the enhanced, because the district court can evaluate how far outside the bounds of relevant conduct are we really. And that's what district courts do every day. So we would submit that in that particular case, say we made that argument and the defense made their argument, it would really come down to can we, the government, based on a preponderance of the evidence, really show that this is relevant conduct? And I do think that would be a more difficult case. Thank you. Is there anything, since apparently this word comes up regularly, is there any reason to publish on this case? It's up to the court. I think it could be helpful. Yes. But what would it say? I think it would essentially say that we would adhere to the plain language of the guidelines of involved can mean, as the court pointed out, there's multiple dictionary definitions. But in adherence to the plain language of the guidelines, it would reiterate the principles in Lavender and Pian Panto that if there are no unwritten requirements in a guideline, then we apply and adhere to the plain text of the guideline. I mean, this guideline comes up, but not that much. It's actually been on the books for about 20 years, and there's only been two cases published in this space generally, which is the Barogo case and Sardiani. And they're really focused on what constitutes an authentication feature. So this case could be helpful to explain what is the relationship between offense involved as well as the possession. But we do think it is clear based on the meaning of the word offense. And I would submit every definition that has been proposed by the defense would read out the meaning of the word offense, because offense is not just offense of conviction. It's relevant conduct. So all acts or omissions do not sort of require. What is your understanding of what your friend on the other side is asking about the intent element from the underlying offense transferring to the sentencing enhancement? Explain that to me. So I think she's asking for two different things relating to CYENTR. One is the first test proposed, I would call it the elements test. That would be the underlying intent that's required for a 1029A3 conviction, intent to defraud. We submit there's no basis for that because, again, you have the language of what offense means, and it doesn't require the elements of the underlying offense, and there's no authority for that proposition. The other argument that I believe the defense is making is that there should be a knowledge requirement or fraudulent intent requirement. I think that would sort of run headlong into the cases that Judge Desai pointed out, which is Lavender, which is trying to read in a CYENTR requirement, sort of put knowing in front of the words possession. So I think those are the two arguments. But, again, they would conflict with the meaning of the word offense. And so we would ask that the court not read in any extra words, not read in any additional elements, and adhere to the plain language of the statute and affirm the district court in this case. Thank you, Your Honors. No additional questions. Thank you. Just briefly, I think the prosecutor said that Congress made a choice to punish possession of authentication features. And I just want to make clear that one of our arguments is that in the SAFE-ID Act and in the conference report, there was never an intent to punish mere possession of authentication features, absent some other aggravating situation. And here we argue we're not trying to read in something. We're just trying to give meaning and content to the phrase the offense involved. And I think it's more than an inadvertent, unintentional, unknowing possession of features that happened to be in a bag of stolen mail that she had. So unless there's any further questions, we'd ask the court to reverse the announcement. Thank you both for your helpful argument in this matter. This will stand submitted. I believe that I can declare at this point that this court is in recess for the week. Is that correct? All right. Thank you. All rise. This court is in recess for the week.
judges: CALLAHAN, DESAI, ALBA